# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION  JUDGE JOAN H. LEFKOW

|  |  |  |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | **01C 9635** |
| Applicant, | ) | Civil Action No. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DENLOW |
| | ) | |
| SIDLEY & AUSTIN, | ) | |
| | ) | |
| Respondent. | ) | |

*DOCKETED*
*JAN 24 2002*

## APPLICATION FOR AN ORDER TO SHOW CAUSE
## WHY SUBPOENA SHOULD NOT BE ENFORCED

1.     This is an action for enforcement of a subpoena duces tecum, pursuant to Sections 7(a) and (b) of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 626(a) and (b) (the "ADEA").

2.     Jurisdiction is conferred upon the court by Sections 9 and 10 of the Federal Trade Commission Act of 1914, as amended, 15 U.S.C. §§ 49 and 50, incorporated in Section 9 of the Fair Labor Standards Act, as amended, 29 U.S.C. § 209, and, through that section, in Section 7(a) of the ADEA, 29 U.S.C. § 626(a).

3.     Applicant, Equal Employment Opportunity Commission (the "Applicant"), is the federal agency charged with the administration, interpretation and enforcement of the ADEA, including, inter alia, the investigation of charges of unlawful employment practices, and is authorized to bring this action pursuant to Section 7(a) of the ADEA, 29 U.S.C. § 626(a).

4.     Respondent is a law firm doing business in the State of Illinois with offices in the

City of Chicago

     5.      On October 23, 2001, pursuant to its authority under Section 626(a) of the ADEA, Applicant issued and served upon Respondent a subpoena <u>duces tecum,</u> No. CH-0217, requiring Respondent to produce information needed as part of Applicant's investigation of possible unlawful employment practices.

     6.      Respondent has refused to comply fully with Subpoena No. CH-0217.

     7.      The accompanying Declaration of Julianne Bowman, Deputy District Director (Exhibit A to the EEOC's Memorandum in Support of Application for Order to Show Cause, filed concurrently herewith), and the attachments thereto, provide the factual basis in support of this Application. The Declaration and the attachments are incorporated by reference into this Application.

     WHEREFORE, the Equal Employment Opportunity Commission prays:

     (a)     That this Court issue an Order directing Respondent to appear before this Court, and to show cause, if there be any, why an Order should not be issued directing Respondent to comply with the subpoena;

     (b)     That, upon return of this Order to Show Cause, an Order issue directing Respondent to comply with the subpoena; and

     (c)     That the Equal Employment Opportunity Commission be granted its costs and such further relief as may be necessary and appropriate.

2

Date: Dec. 18, 2001

Respectfully submitted,

John Hendrickson
Regional Attorney


Noelle Brennan
Supervisory Trial Attorney


Deborah L. Hamilton
Trial Attorney


EQUAL EMPLOYMENT OPPORTUNITY
  COMMISSION
Chicago District Office
500 West Madison Street
Suite 2800
Chicago, Illinois 60661
(312) 353-7649

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



| | |
|---|---|
| **UNITED STATES EQUAL EMPLOYMENT**<br>**OPPORTUNITY COMMISSION,** | JUDGE JOAN H. LEFKOW<br>) |
| | ) |
| **Applicant,** | ) |
| | ) **Civil Action No.** |
| **v.** | **01C 9635** |
| | ) |
| **SIDLEY & AUSTIN,** | ) |
| | **MAGISTRATE JUDGE DENLOW** |
| **Respondent.** | ) |
| | ) **DOCKETED** |
| | **JAN 2 4 2002** |

## MEMORANDUM IN SUPPORT OF
## APPLICATION FOR ORDER TO SHOW CAUSE

The Respondent, Sidley & Austin ("Sidley") will not comply with an administrative subpoena served by the U.S. Equal Employment Opportunity Commission ("EEOC"). Therefore, the EEOC is compelled to apply to this Court for an order to enforce the subpoena.

## I.   Background

In the fall of 1999, Sidley & Austin told 32 partners[1] that they had to accept a demotion from "partner" to "counsel" or "senior counsel" or leave the firm, and Sidley reduced its mandatory retirement age from 65 to a sliding scale from 60-65. These changes, which Sidley has referred to as the "Plan," appeared designed to remove some of Sidley's older partners from the firm. For example, in the Corporate Group in Sidley's Chicago office, only the 2 oldest partners (who had not yet reached the mandatory retirement age of 65) and one other were demoted. In the Federal and

---

[1] By its use of the term partners to refer to these individuals throughout the brief, EEOC does not concede that they were in fact partners for the purposes of the ADEA. As the brief outlines, EEOC is pursuing an investigation to determine the reality of their employment status as well as whether any age discrimination occurred.

State Taxation Group in Sidley's Chicago office, 3 of the 4 oldest partners were demoted. Likewise, in the Los Angeles Real Estate Group, the 2 oldest partners were selected for demotion.

### A.    Sidley Implements "The Plan"

In December of 1999, the Chicago Lawyer newspaper reported that "Sidley & Austin targets equity status and retirement age." Mark Schauerte, *Sidley & Austin Targets Equity Status and Retirement Age*, Chicago Lawyer, December 1999. Sidley's actions involved: 1) "requir[ing] attorneys to retire between the ages of 60 and 65, rather than at age 65;" and 2) stripping some Sidley partners of their equity status. *Id.* The chairman of Sidley's executive committee, Mr. Thomas Cole, described the affected partners as "nearly 20 older attorneys and a smaller number of younger attorney partners." *Id.* (emphasis added).

This article confirmed prior reports of thinning in the partner ranks at Sidley. Crain's Chicago Business newspaper had reported that "Sidley & Austin has changed its retirement age from 65 to a policy under which retirement is expected between ages 60 and 65 . . . . As a result, nearly 20 older partners are being offered senior counsel status . . . ." Crain's Chicago Business, October 18, 1999 (emphasis added).

The American Lawyer newspaper provided more details in December 1999, saying that the change in partner status was part of a strategic plan announced at the annual partners meeting on October 13, 1999, and reporting that "The affected partners, who are mostly in their mid-fifties and early sixties, will lose their equity status as of January 1, according to managing partner Charles Douglas." Laura Pearlman, *Thinning The Ranks at Sidley*, American Lawyer, Dec. 1999. Chairman Douglas was reported as explaining "that his firm's strategy will expand opportunities for younger partners and associates, as senior partners transfer their work to them. To encourage this youth movement, the firm also lowered its retirement age from 65 to a flexible 60-65." *Id.* (emphasis

2

added).  In the same article the firm also denied that this strategy discriminated against older lawyers.  *Id.*  The Chicago Tribune, however, reported that "At the root of the shuffling is a decision by the executive committee to lower the retirement age at the firm."  John Schmeltzer, *Sidley Shuffles Partners' Status*, Chicago Tribune, Dec. 8, 1999 at Section 3.  Chairman Douglas was again quoted making mention of the benefits for younger lawyers: "This puts in place a structure for the future that provides for greater opportunity for younger lawyers down the road."  *Id.* (emphasis added).

In a letter to Sidley's clients published on the firm's Internet website, Co-Chairmen Cole and Douglas themselves emphasized that "the theme of all of these changes was the creation of opportunity for our younger lawyers."  Letter from Executive Committee Chairman Thomas A. Cole & Management Committee Chairman, Charles W. Douglas to Our Clients, Alumni, Colleagues and Friends (April 5, 2000).  A comprehensive article in June 2000 in the American Lawyer quoted Chairman Douglas again making reference to the benefits of the plan for "younger lawyers" and again noted that the majority of the partners demoted were over 50 years old.  Amanda Ripley, *Seniority Complex*, The American Lawyer, June 2, 2000.  "The future of the firm is and always has been in the development of opportunities for the younger lawyers . . . ."  *Id.* (emphasis added).

Chairman Cole was not alone in correlating age with performance.  A former member of the firm's management committee was quoted as saying "By and large, I thought it was inappropriate for the old guys to stay around when we had so much young talent around."  *Id.*

The articles that discussed the issue suggested that Sidley functioned more like a corporation – with the majority of its partners treated as corporate employees – than a traditional partnership. The American Lawyer reported that "The whole partnership never takes a formal vote on anything." Amanda Ripley, *Seniority Complex*, The American Lawyer, June 2, 2000 (emphasis added).  And

3

that "[t]he seven members of Sidley's management committee make most of the decisions at the firm, with the approval of the 34-member of executive committee." *Id.* Even the decision to demote partners came as a surprise to most of the other partners. *Id.* Chairman Cole described Sidley's system of management as "a little mysterious," and acknowledged that the firm did not take votes – he could not ever recall one. Lori Tripoli, *Winds of Change–New Leaders Pursue New Profits, But Not at Any Cost*, Of Counsel, Jan. 3, 2000.

EEOC received a complaint of age discrimination in connection with the Plan from a confidential government informer from within Sidley who provided information regarding the adoption and implementation of the Plan, the role of partners in the firm, and the governance of the firm.

**B.    EEOC Opens A Directed Investigation**

Acting pursuant to its statutory authority, the Chicago District Office opened a directed investigation of Sidley's compliance with the Age Discrimination in Employment Act ("ADEA"), including but not limited to the 1999 partner demotions and reduction in the retirement age.  See 29 C.F.R. 1626.4 (1991) ("The Commission may, on its own initiative, conduct investigations of employers . . . ."). On July 5, 2000, EEOC notified Sidley of the investigation and issued a Request for Information and Documents ("RFI") requesting a response by August 7, 2000.   The RFI requested information and documents relevant to Sidley's status as an employer within the meaning of the ADEA as well as the issue of whether age discrimination had occurred. Letter from John P. Rowe, District Director, EEOC to Chief Executive Officer, Sidley & Austin with Request for Information attached (attached to Declaration of Deputy District Director as attachments 1 and 2).[2]

---

[2]The Declaration of the Deputy District Director has been filed contemporaneously with this Memorandum.  In light of Sidley's repeated requests for confidentiality, EEOC has filed the

C. **Sidley Refuses To Respond Fully To EEOC's Requests For Information**

After an exchange of letters with the EEOC regarding the extent of its response and over a month after the initial due date, on September 12, 2000 Sidley submitted a response in the form of a position statement. (Attached to Declaration of Deputy District Director as Attachment 3). This response (though voluminous) did not specifically address each of the issues contained in EEOC's RFI. Sidley took the position that because the protections of the ADEA are limited to employees, none of its partners falls within the jurisdiction of the ADEA. Thus, any further investigation of Sidley was not warranted. Sidley refused to provide any detailed information regarding the reasons for the change in status of the demoted partners. *Id.*

In a subsequent letter, Sidley offered to "provide the EEOC with any and all information the EEOC reasonably needs on the issue of whether Sidley & Austin is 'really' a partnership." Letter from Paul Grossman, Paul, Hastings to Karen Sheley, Investigator, EEOC (Sept. 21, 2000) (Attached to Declaration of Deputy District Director as Attachment 4). Despite this offer, Sidley continued to refuse to respond to significant portions of the EEOC's RFI although EEOC requested a complete response.

After a further exchange of letters and telephone calls, Sidley eventually on October 16, 2000 provided a subsequent response to the July 5, 2000 RFI, which specifically addressed each item in the request. Letter from Paul Grossman, Paul, Hasting to Karen Sheley, Investigator, EEOC (Oct.

---

Declaration and its exhibits under seal to give Sidley an opportunity to seek a limited protective order from this Court. EEOC objects, however, to wholesale sealing of publicly filed documents. Overly broad protective orders infringe on the right of public access to court proceedings and documents which is grounded in both the common law and the First Amendment. *Associated Press, et.al. v. Ladd*, 162 F.3d at 506 (7th Cir. 1998). *Grove Fresh Distributors v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) ("The public's right of access to court proceedings and documents is well established."); *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.*, 178 F.3d 943 (7th Cir. 1999) (same).

16, 2000) (Attached to Declaration of Deputy District Director as Attachment 5).  In this response, Sidley again refused to turn over significant categories of documents.  For example, in response to an item requesting documents relating to the  Plan, Sidley answered that "the Request seeks documents, which invades the privacy rights of Sidley partners and are not relevant to the issue of whether Sidley partners 'really' are partners."  *Id.* at 8.  Likewise, Sidley continued to refuse to provide any partner-specific information regarding performance.

On April 10, 2001, EEOC issued another RFI requesting all documents relating to the Plan and a request for correspondence addressing each partner's annual compensation.  (Attached to Declaration of Deputy District Director as Attachment 6.)

In response on June 1, 2001, Sidley supplied some supplemental materials but refused to provide any information that is not relevant (in Sidley's judgment) "to the issue of whether Sidley partners are bona fide partners."  Letter from Paul Grossman, Paul, Hastings, to Karen Sheley, Investigator, EEOC (June 1, 2001) at 9 (Attached to Declaration of Deputy District Director as Attachment 7).

At the request of Sidley, on June 19, 2001, representatives of Sidley and the EEOC held a meeting at the Chicago District Office of the EEOC regarding the investigation.  Sidley agreed to review its previous answers to EEOC's Requests for Information and to provide everything that it deemed  relevant to the jurisdictional issue of whether its partners are entitled to the protections of the ADEA. Letter from Paul Grossman, Paul Hastings to John Rowe, District Director, EEOC (July 3, 2001) (Attached to Declaration of Deputy District Director as Attachment 8.)  Sidley did not agree, however, to respond fully to EEOC's Requests despite EEOC's repeated indications that completion of the investigation required complete responses.

Sidley's further responses were received on September 6, 2001, but they remained

incomplete. Sidley continued to refuse to provide information regarding the selection of particular

partners for termination or downgrading pursuant to the Plan and documentation regarding the

development of the Plan that led to the demotion of partners and the reduction of the retirement age.

Letter from Paul Grossman, Paul, Hastings to Karen Sheley, Investigator, EEOC (September 6,

2001) (Attached to Declaration of Deputy District Director as Attachment 9).

### D.    The October 23, 2001 Subpoena

Given Sidley's consistent refusals to provide the requested information, on October 23, 2001

the EEOC issued the Subpoena now before the Court.  (Attached to Declaration of Deputy District

Director as Attachment 10.)  Although the ADEA does not contemplate any such procedure, on

November 2, 2001, Sidley submitted a so-called "Petition to Revoke the Subpoena" to the

Commission based on Sidley's opinion that its partners do not constitute covered employees under

the statute.  (Attached to Declaration of Deputy District Director as Attachment 11.)

On November 30, 2001, Sidley submitted a partial response to the subpoena.  (Attached to

Declaration of Deputy District Director as Attachment 12.)  Sidley provided substantive information

in response to Requests 1 and 2.  The other seven requests remain unanswered.  Sidley thus refused

to provide documents responsive to the following paragraphs of the Subpoena:

> 3.    The Plan and all documents referring or relating to the
> Plan (including but not limited to drafts of the Plan).
>
> 4.    A compilation created by Respondent setting forth for each person who has
> been a Partner of Sidley at any time during the period from January 1, 1999
> to the present,  the following:
>
> 1)    Name.
> 2)    Date of birth.
> 3)    Date of hire.
> 4)    Date of becoming a Partner.
> 5)    Area of practice and practice group(s) of which a member.
> 6)    Hourly billing rate and changes therein from January 1, 1997 to the

present.

7)    Current title.

8)    Aggregate number of hours and dollars billed to clients of Sidley by year for the calendar years 1997, 1998, 1999, and 2000 through December 31, 2000.

9)    Aggregate dollars collected by Sidley to date for the billings described above in h, indicating the amount attributable to each year's billings.

10)    Practice group(s) within which the person served during the period from January 1, 1995 to the present.

11)    Date and reason for separation from Sidley (if applicable).

5.    With respect to each person who has been a Partner of Sidley at any time during the period from January 1, 1999 to the present, completed (*i.e.,* "filled-in") memoranda to that Partner with respect to each year 1997-2000 inclusive of the type provided to EEOC as Exhibit B to your counsel's letter to EEOC dated September 12, 2000 ( which discussed "overall approach," annual "results," annual "participations generally," "your participation," and "minimum balances and expense ratio").

6.    A compilation created by Respondent setting forth with respect to each Partner of Sidley whose status or compensation changed under the Plan or for any reason related to the Plan,  the following:

a.    Name

b.    The reasons for the change in status.

c.    The date the Partner was informed of the change in status and how and by whom.

d.    If the Partner did not "consent," what happened to him or her.

7.    The reasons that Sidley adopted the Plan, including all documentation reflecting why particular individuals were chosen for a change of status under the Plan, including notes from interviews by Management/Executive Committee members with each and every Sidley partner regarding the need to implement the Plan and the persons selected for inclusion.

8.    All retirement ages or policies (whether formal or informal or what Sidley deems "expectations" of a retirement age) which have been in effect or advised at Sidley from January 1, 1970 to the present and the years each was in effect or advised and any exceptions thereto.

9.    A compilation created by Respondent with respect to each Partner of Sidley who retired or was retired because of the retirement age, expectation or policy in

effect at Sidley, or who retired coincident with the retirement age, expectation or policy in effect at Sidley, or who retired at age sixty (60) or later during the period from January 1, 1990 to the present, setting forth the following:

a.   The name and last known address of the Partner.

b.   The date of birth of the Partner.

c.   The date of retirement of the Partner.

d.   The gross aggregate amount of <u>compensation</u> received annually by the Partner from Sidley during the two full calendar years prior to retirement and the gross aggregate amount of <u>compensation</u> received by the Partner from Sidley during the last partial year prior to retirement, if any. (Excluding any payments in the nature of retirement benefits or any other payments <u>not</u> constituting compensation.)

e.   The gross aggregate amount of <u>compensation</u>, if any, received annually by the Partner from Sidley since retirement to the present. (Excluding any payments in the nature of retirement benefits or any other payments not constituting compensation.)

EEOC now seeks enforcement of its subpoena from this Court.

## II.   <u>Argument</u>

The ADEA prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age" and gives the EEOC the power to investigate possible violations of the ADEA. 29 U.S.C. 623, 626. The statute provides that this power should be exercised in accord with sections 9 and 11 of the Fair Labor Standards Act, 29 U.S.C. 626(a) (referring to 29 U.S.C. 209). The Fair Labor Standards Act in turn incorporates sections 9 and 10 of the Federal Trade Commission Act and grants the authority for the EEOC to subpoena witnesses and documents, 29 U.S.C. 209 (referring to 15 U.S.C. 49). Under this section, the "the Commission shall . . . have access to . . . <u>any</u> <u>documentary evidence of any person, **partnership** or corporation being investigated</u> . . . And the Commission shall have power to require by subpoena the . . . the production of <u>all such documentary</u>

9

evidence relating to any matter under investigation." 15 U.S.C. 49 (emphasis added).

"In a subpoena enforcement proceeding, the role of the court is 'sharply limited.'  Such proceedings are designed to be summary in nature." *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir. 1987) (internal citations omitted). "Courts enforce an administrative subpoena if it seeks reasonably relevant information, is not too indefinite and relates to an investigation within the agency's authority." *EEOC v. Quad Graphics*, 63 F.3d 642, 645 (7th Cir. 1995) (citing cases). "The scope of judicial inquiry in an EEOC or any other agency subpoena enforcement proceeding is quite narrow.  The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation.  *EEOC v. Children's Hosp. Med. Cntr.*, 719 F.2d 1426, 1428 (9th Cir. 1983).

Here there should be no doubt that the EEOC subpoena at issue satisfies these criteria: the items in the subpoena are all relevant to the questions whether Sidley partners are covered employees under the ADEA and whether Sidley's 1999 partner demotions and reductions in its retirement age violated the ADEA; the subpoenaed items are clear, not indefinite; and the items all relate to possible age discrimination, which the EEOC is statutorily authorized to investigate under section 7 of the ADEA. 29 U.S.C. 626.  Indeed, in correspondence with the EEOC, Sidley has not disputed that the items requested are relevant either to coverage or to age discrimination by the Firm.  Rather, Sidley has asserted that the existence of a coverage dispute takes the EEOC's investigation outside the agency's statutory authority.  But this is not the law.

## A.  A Coverage Dispute Does Not Preclude the EEOC's Investigation.

A coverage dispute does not provide a legitimate basis for refusing to comply with a subpoena in an EEOC investigation.  "[T]hat courts should not refuse to enforce an administrative

subpoena when confronted by a fact-based claim regarding coverage or compliance with the law --

has been consistently reaffirmed by the Supreme Court." *EEOC v. Karuk Tribe Housing Authority*,

260 F.3d 1071, 1076 (9th Cir. 2001) (citing cases). *See also Endicott Johnson Corp. v. Perkins*, 317

U.S. 501, 507-09 (1943) (district court not authorized to decide facts in dispute between the parties

in a subpoena enforcement hearing).

Thus, in a variety of circumstances, courts have refused respondents' attempts to short circuit

the EEOC investigatory process by litigating coverage issues at the subpoena enforcement stage.

*See, e.g., EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920, 924 (11th Cir. 1991) (enforcing an EEOC

subpoena and holding that it would be premature to decide the jurisdictional reach of Title VII with

respect to owners of foreign flagged cruise ships) ("[T]he proper scope of our inquiry at this early

stage does not include the question of the coverage of Title VII."); *EEOC v. Tempel Steel Co.*, 814

F.2d 482, 485 (7th Cir. 1987) (enforcing an EEOC subpoena over respondent's objection that

underlying discrimination claim was untimely) ("[A] timeliness defense may not be raised to block

enforcement of an EEOC subpoena."); *EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426 (9th Cir.

1983) (enforcing EEOC subpoenas and holding that it would be premature to address the res judicata

effect of a consent decree that might bar any suit arising out of the investigation) ("A party may not

defeat agency authority to investigate with a claim that could be a defense if the agency subsequently

decides to bring an action against it."). *See also EEOC v. Benicorp Ins. Co.*, 2000 WL 724004, *4

(S.D. Ind. 2000) (enforcing subpoena and declining to decide whether an employer health plan was

"employer" for purposes of ADA and whether any claim would be based on the content of the

employee's health insurance policy) ("Even if the ultimate result of the investigation may place the

subject of this controversy outside of the scope of the EEOC's authority, that agency's broad

investigative powers are sufficient to justify this inquiry as relating to an investigation within its

authority."); *EEOC v. Institute of Gas Technology*, 1980 WL 219, *2 (N.D. Ill. 1980) (enforcing

subpoena and declining to decide whether employment law extended to discriminatory conduct

occurring outside the territorial limits of the United States) ("Accordingly, as intriguing as is the

issue of whether Title VII applies extraterritorially, an issue which has never been decided by a court

of the United States, the court may not determine the merits of that issue in this proceeding.").

In the only reported case, in which an employer refused to respond to an EEOC subpoena

on the ground that the affected individuals were partners rather than employees, the U.S. Court of

Appeals for the Eighth Circuit rejected the employer's position and ordered the documents produced.

*EEOC v. Peat, Marwick, Mitchell & Co.*, 775 F.2d 928, 930 (8th Cir. 1985).  The EEOC had begun

investigating the "retirement practices and polices of PM [Peat Marwick] in an effort to determine"

whether they were in violation of the ADEA.  In accord with this investigation, the EEOC

"subpoenaed documents of [Peat Marwick] bearing upon 'the relationship of members to the firm

and members vis-a-vis members' and documents relating to [Peat Marwick's] retirement practices

and policies." *Id.* (emphasis added).  Peat Marwick resisted on the ground that its partners are not

employees but rather fall within the definition of employers under the statute.  But the Eighth Circuit

explained that the existence of the coverage issue did not preclude the enforcement of the subpoena.

"It can no longer be disputed that a subpoena enforcement proceeding is not the proper forum in

which to litigate the question of coverage under a particular statute." *Id.* at 930.  The Eighth Circuit

determined that "EEOC's investigation of [Peat Marwick] is an effort to determine whether [Peat

Marwick's] retirement practices and policies discriminate against individuals classified as employees

for purposes of the ADEA.  Thus, EEOC's investigation is for a legitimate purpose authorized by

Congress." *Id.*  Accordingly, this Court should enforce the EEOC's subpoena despite the existence

of a coverage dispute regarding whether Sidley's partners are properly characterized as employees

entitled to the protections of the ADEA.  Any other result flies in the face of well-established

precedent and the clear statutory language of the Commission's investigatory power, which provides

that the Commission "shall . . . have access to . . . <u>any documentary evidence of any person,</u>

**<u>partnership</u>** <u>or corporation being investigated.</u>"  15 U.S.C. 49.

**B.      The EEOC Is Not Required To Bifurcate Its Investigation Between Coverage**
         **And the Merits**

Any attempt to suggest that the EEOC must litigate and win the coverage question before it

can proceed with its investigation of the underlying statutory violation is completely unsupported

by precedent or statute.  This would create a wholly new two-step procedure that would impede

EEOC's investigations of a wide range of statutory violations -- to say nothing of the impact that it

would have on every other federal agency that conducts investigations.  As the Seventh Circuit has

explained, "If every possible defense, procedural or substantive, were litigated at the subpoena

enforcement stage, administrative investigations obviously would be subjected to great delay."

*Tempel Steel*, 814 F.2d at 485.    The EEOC -- like other administrative agencies -- is entitled "to

determine in the first instance the question of coverage in the course of a preliminary investigation

into possible violations." *American Int'l Trading Co. v. Bagley*, 536 F.2d 1196 (7th Cir. 1976).

This Court itself considered and <u>rejected</u> the claim of a respondent that it had supplied

sufficient information to show that it was not subject to the jurisdiction of the EEOC and thus should

not be required to produce the other information requested by the EEOC.  *Institute of Gas*

*Technology*, 1980 WL 219, * 5.   "Whether the information already provided is all that is required

is not a decision to be made by the respondent.  The nature and extent of the investigation . . . is

reserved to the agency. <u>The court has no power to require the applicant to first determine one of</u>

<u>several issues nor can the court control the agency's procedures.</u>"  *Id.* (emphasis added). *See also*

*CFTC v. Tokheim*, 153 F.3d 474, 477 (7th Cir. 1998) (Respondent's "contention that he is exempt from the Act may prove to be true following the Commission's investigation. This possibility, however, does not necessitate that the Commission establish that [Respondent] is covered by the Act even before it begins its investigation.")

Even where there is a coverage dispute, other courts have permitted the EEOC to go forward with a complete investigation. As the Eleventh Circuit explained, the "EEOC must be allowed to investigate <u>the facts</u>, including the facts relevant to jurisdiction, as an initial matter. To do otherwise would be to not only place the cart before the horse but to substitute a different driver for the one appointed by Congress." *Kloster*, 939 F.2d at 924. "The initial determination of the coverage question is left to the administrative agency seeking enforcement of the subpoena." *Peat, Marwick*, 775 F.2d at 930 (citing *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 214 (1946)).

## C.     Litigation Of Whether Sidley's Partners Are Covered Employees Under the ADEA Would Be Premature

### 1.     Whether A Partner Is A Covered Employee Requires Fact Intensive Analysis

Sidley would have this court to believe that just because its partners carry the title "partners" they can not be "employees" under the employment laws. But this is not the law. "We reject the notion that labels can conclusively resolve status inquiries. We hold instead that the Title VII question cannot be decided solely on the basis that a partnership calls -- or declines to call a -- a person a partner. A court must peer beneath the label and probe the actual circumstances of that person's relationship with the partnership." *Serapion v. Martinez*, 119 F.3d 982, 987 (1st Cir. 1997). Whether a partner is properly regarded as a covered employee for purposes of the ADEA thus requires a fact-intensive inquiry that cannot be resolved in a summary subpoena enforcement

14

proceeding.

The Seventh Circuit has recognized that the "economic realities" test determines who is an employee for purposes of claiming the protections of the employment laws and has declined to rely on an individual's title or the type of organization for which he works. *EEOC v. Dowd & Dowd*, 736 F.2d 1177, 1178 & n.2 (7th Cir. 1984) (examining management, control and ownership to determine whether shareholders were "employees"); *see also Chavero v. Local 241*, 787 F.2d 1154 (7th Cir. 1986) (recognizing that an individual's employment status is not determined by the job title) ("A director may accept duties that make him also an employee . . . the primary consideration is whether an employer-employee relationship exists); *Zimmerman v. North Am. Signal Co.*, 704 F.2d 347, 352 (7th Cir. 1983) ("We caution that employers cannot avoid having employees counted . . . by denominating them as directors, independent contractors, or other designations besides employee. The issue is whether an employer-employee relationship exists, not what title a worker holds.")[3] And, as a regulatory agency, the EEOC has developed a list of six factors to be considered in determining whether a partner is an employee: (i) whether the organization can hire or fire the individual or set the rules and regulations of the individual's work; (ii) whether and, if so, to what extent the organization supervises the individual's work; (iii) whether the individual reports to someone higher in the organization; (iv) whether and, if so, to what extent the individual is able to influence the organization; (v) whether the parties intended that the individual be an employee, as

---

[3] The only Seventh Circuit case to consider whether partners could be regarded as employees concluded that they could not but limited itself to "the facts of this particular case that defendant partners are not employees," which included the fact that the particular partners for whom employee status was sought had also been regarded as the employer. *Burke*, 556 F.2d 867, 870 (7th Cir. 1977). Here EEOC believes that the information thus far made available suggests that while some partners of Sidley (those serving on the Management and Executive Committees) may constitute an employer for purposes of ADEA, other partners are employees.

expressed in written agreements or contracts; (vi) whether the individual shares in the profits, losses, and liabilities of the organization. *Partners, Officers, Members of Boards of Directors, and Major Shareholders*, EEOC Compliance Manual, Section II (2000).[4] *See also Philip J. Pfeiffer, 2000 Cumulative Supplement to Lindemann & Grossman's Employment Discrimination Law* 746-47 (2000) ("Courts continue to apply a case-by-case approach to determine whether a business 'partner' is, in fact, an employee protected by Title VII.")

Courts have adopted a fact-intensive means of evaluating whether a person entitled "partner" is in fact a partner or is more properly regarded as an employee for purposes of the employment laws. *Serapion*, 119 F.3d at 987-88 ("[T]he correct course is to undertake a case-by-case analysis aimed at determining whether an individual described as a partner actually bears a close enough resemblance to an employee to be afforded the protections of Title VII. . . . the critical attributes of proprietary status involve three broad, overlapping categories: ownership, remuneration and management."); *Simpson v. Ernst & Young*, 100 F.3d 436 (6th Cir. 1996) ("This court, in addressing the distinction between partners and employees . . . evaluates . . . the right and duty to participate in management; the right and duty to act as agent of other partners; exposure to liability; the fiduciary relationship among partners; the use of the term co-owners to indicate each partner's power of ultimate control; participation in profits and losses; investment in the firm; partial ownership of firm assets; voting rights; the aggrieved individual's ability to control and operate the business; the extent to which the aggrieved individual's compensation was calculated as a percentage of the firm's

---

[4]Because the EEOC is charged with enforcing the ADEA, the EEOC's interpretation regarding the ADEA's coverage is entitled to deference. *See Hendricks-Robinson v. Excel Corp.*, 154 F.3d 693, n.7 (7th Cir. 1998) ("The interpretation of the ADA by the enforcing agency is entitled to deference."); *Gilardi v. Schroder*, 833 F.2d 1226, 1232 (7th Cir. 1987) ("This Court is bound to give substantial weight to the EEOC's interpretation of the statute that it administers.")

profits; the extent of that individual's employment security; and other indicia of ownership." (internal citations, quotations and footnotes omitted); *Strother v. Southern Cal. Permanente Med. Group.,* 79 F.3d 859, 867 (9th Cir. 1996) ("Courts must analyze the true relationship among partners, including the method of compensation, the 'partner's' responsibility for partnership liabilities, and the management structure and the 'partner's' role in that management to determine if an individual should be treated as a partner or an employee for the purpose of the employment discrimination laws."); *Rhoads v. The Jones Financial Co.,* 957 F. Supp. 1102 (E.D. Mo. 1997) ("Because the employment relationship turns on the substance of the relationship rather than the label affixed thereto, the Court must look to the actual duties and role of the individual to determine whether the individual was an employee or a partner with the company." (internal quotations and citation omitted)).

The factual material necessary to determine whether Sidley partners are true partners or covered employees for purposes of the ADEA makes any resolution of these partners' status inappropriate in the course of a subpoena enforcement proceeding. "Factual challenges [to the enforcement of administrative subpoenas] based on a lack of statutory 'coverage' are clearly not permitted . . . ." *Karuk Tribe Housing Auth.,* 260 F.3d at 1077. Those cases that have decided a jurisdictional question in the course of a subpoena enforcement proceeding have done so only where the disputed issue "is a pure question of law, the resolution of which does not depend on a factual inquiry, and which would not undermine the role of subpoena enforcement actions as summary procedure[s] designed to allow speedy investigation of EEOC charges." *Karuk Tribe Housing Auth.,* 260 F.3d. at 1078 (internal quotations and citations omitted) (declining to enforce an ADEA subpoena against an Indian tribe where the question whether the Tribe was subject to the ADEA was a "pure question of law."). *See also Reich v. Great Lakes Indian Fish & Wildlife Commn.,* 4 F.3d

490 (7th Cir. 1993) (resolving the jurisdictional status of respondent only where the respondent had admitted the underlying violation of the Fair Labor Standards Act <u>and</u> "the question of statutory coverage is independent of any information that the subpoena might produce as it is a question purely of law.") Resolving the question whether any of Sidley's partners are covered employees requires detailed factual analysis and cannot be decided in the course of a summary subpoena enforcement proceeding.

### 2.    The Coverage Question Cannot Be Resolved Without The Subpoenaed Materials

The subpoenaed materials can be divided into three categories: **1)** those regarding the adoption, development, and implementation of the Plan and the selection of various partners for demotion or termination (Requests 3, 6, 7); **2)** the performance of Sidley's partners and their remuneration and ownership interests in the firm (Requests 4, 5); and **3)** the existence and implementation of any retirement age at Sidley (Requests 8, 9). Each of these categories is relevant <u>both</u> to the question whether there has been a substantive violation of the ADEA and to whether Sidley's partners are covered employees. Thus, even if it were appropriate to resolve coverage questions prior to engaging in a merits investigation (which it is not), coverage in this case cannot be resolved because the subpoenaed documents are necessary to analyze coverage.

Because analysis of the question whether a partner is an employee requires a facts and circumstances examination of the partner's role in the firm and the firm's relationship to the partner, the documents requested in category 1 regarding the adoption, development and implementation of the Plan and the selection of various partners for participation in it are necessary for the EEOC to determine whether Sidley's partners are covered employees. Questions about the Plan -- obviously a major strategic event for the law firm -- and its adoption, development, and implementation as well

as the role of the various partners with respect to each part of the process reveal how Sidley related to its partners during a critical restructuring. Further, these questions also help to show how the process at the firm worked when partners were terminated or demoted and the level of job security various partners had. Theses questions go to the heart of the "economic realities" of the functioning of the firm.

The documents requested in category 2 are also necessary for the EEOC to determine whether any of Sidley's partners are covered employees because information regarding the comparative performance of the partners relates to the management of the firm and the partners' job security and the risk that they could experience discrimination. A comparison of the demoted partners' performance with the other partners' performance, and economic remuneration is relevant to evaluating the partners' job security and their ability to play a role in management of the Firm. Likewise, the documents requested in category 3 regarding any retirement age in effect at Sidley and the compensation received by retired partners prior to and during retirement relate to the partners' job security and comparative longevity at the firm.

Other courts have recognized that information regarding an employee's job security like the information requested in each of the categories of documents is relevant to determining whether an individual entitled a partner is in fact properly recognized as an employee. *Ehrlich v. Howe*, 848 F. Supp. 482, 489 (S.D.N.Y. 1994) ("The final . . . factor looks at [the plaintiff's] employment security to determine if partners in the enterprise have greater job security than employees."); *Caruso v. Peat, Marwick, Mitchell & Co.*, 664 F. Supp. 144, 149 (S.D.N.Y. 1987) ("[T]he Court holds the view that a determination of an individual's status as an employee or a partner for purposes of an ADEA should include . . . [3] the extent of the individual's employment security.") Indeed, in considering whether a shareholder in a professional corporation was properly

19

regarded as an employee, this court explained that the court "must assess the economic realities underlying the relationship between the individual and the so-called principal in an effort to determine whether the individual is likely to be susceptible to the discriminatory practices which the act was designed to eliminate." *Schmidt v. Ottawa Med. Cntr.*, 155 F.Supp. 2d 919, 921 (N.D. Ill. 2001). *See also Partners, Officers, Members of Boards of Directors, and Major Shareholders,* EEO Compliance Manual, Section II (2000) ("whether the organization can hire or fire the individual" is a factor in determining whether the individual is properly regarded as an employee.)[5]

The EEOC's interpretation regarding what is relevant to the coverage question in this case is entitled to deference. "Courts defer to an agency's own appraisal of what is relevant 'so long as it is not obviously wrong.'" *EEOC v. Lockheed Martin Corp., Aero & Naval Sys.,* 116 F.3d 110, 113 (quoting *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992)). The Supreme Court has characterized the relevancy requirement as "not especially constraining." *EEOC v. Shell Oil Co.*, 466 U.S. 54 (1983). "The term relevant will be generously construed to afford the Commission access to virtually any material that might cast light on the allegations against the employer." *Id.* at 68-69 (internal quotations omitted). There is no reason to deviate from this established rule now.

---

[5]Sidley will also suggest that privacy concerns provide an additional reason for its refusal to turn over to the EEOC this information regarding partner performance and the details of the development of the Plan. This argument is a total non-starter, which was rejected by the Supreme Court. In *University of Pennsylvania v. EEOC*, the Court held that the EEOC is not required to show anything more than relevance to obtain information from a respondent – even confidential information. 493 U.S. 182, 192 (1990). Any other result, the Court noted, might have created a privilege for lawyers' peer reviews in law firms. *Id.* at 194. There is no such privilege. "We stand behind the breakwater Congress has established: unless specifically provided otherwise in the statute, the EEOC may obtain 'relevant' evidence. Congress has made the choice." *Id.* at 194.

3.      **The Factual Material Supplied Thus Far Provides A Reasonable Basis To Believe That Many Sidley Partners Are Properly Regarded As Employees For Purposes Of The ADEA**

"As long as the evidence sought is relevant, material and there is some plausible ground for jurisdiction, or to phrase it another way, unless jurisdiction is plainly lacking, the court should enforce the subpoena." *Children's Hosp. Med. Cntr.*, 719 F.2d at 1430. "The EEOC is not required to make a showing" . . . . that respondent's "partners may in fact be employees for purposes of the ADEA." *Peat, Marwick*, 775 F.2d at 930. *See also A.E. Stanley Mfg. Co.,* 711 F.2d 780, 783 (7th Cir. 1983) ("The EEOC need not demonstrate probable cause before it is entitled to information. . . . In many instances, the purpose of the EEOC investigation is to determine whether probable cause does in fact exist."); *Institute of Gas Technology,* 1980 WL 219, *3 ("Neither the EEOC nor any other agency has the duty to show that the exercise of its jurisdiction is supported by reasonable cause in a proceeding to enforce an agency subpoena.") Yet, even this were required, EEOC could easily satisfy this standard here.

All of Sidley's partners are not equal -- in fact they are from it. The "economic realities" at Sidley demonstrate that the management of the firm rests so completely in the hands of two committees that any partners outside the members of these committees are properly regarded as employees. These committees are:

> ** **The Executive Committee**, which consists of 36 partners and is charged under the Partnership Agreement with "all Partnership governance, including determination of salaries, expenses, Partners' participations in Partnership profits and losses, required Minimum Balances of Partners, investment of Partnership funds, designation of Counsel, and the admission and expulsion of Partners", and

> ** **The Management Committee**, which consists of 8 partners and "administers the current operating affairs of the Firm."

21

June 1, 2001 response at 1c (citing Partnership Agreement) attached to Declaration of Deputy District Director as Attachment 7.

As Sidley itself said, the "Executive Committee has . . . elected all members to the Firm's Executive Committee" and "has appointed a Management Committee." *Id.* (emphasis added). Thus, the Management and Executive Committees are entirely self-perpetuating. It is impossible for any partner to become a member of the Management and Executive Committees without the support of the current Management and Executive Committees.

Sidley has itself publicized the fact that it is <u>not</u> a traditional partnership law firm in which every partner exercises at least some (even if minimal) actual power through voting on matters of partnership business. As reported by the American Lawyer, and admitted by Sidley, "The whole partnership <u>never</u> takes a formal vote on anything." Amanda Ripley, *Seniority Complex,* The American Lawyer, June 2, 2000. Instead, as Sidley admits, the affairs of the firm are managed and governed by a 36 member Executive Committee and an eight member Management Committee which is a subcommittee of the Executive Committee. These committees appear to be wholly self-perpetuating and vacancies appear to be filled by the vote of those already on the committees. Thus, contrary to how law firm partnerships have traditionally operated (and still operate), so-called partners at Sidley can and do go through entire careers in the firm without ever having their vote solicited, cast or counted even in elections to membership on the committees which govern the firm. It appears that, with the single exception of a vote on a merger with another law firm after the commencement of EEOC's investigation, *most partners have not and do not vote ever on anything period.*

The evidence that EEOC has obtained to date and the evidence sought by the subpoena may demonstrate that Sidley in not law firm in which some partners are "dominated" by other partners.

Rather, it may be a firm within which, at all pertinent times, some partners have been completely excluded from ever having their vote–however small–taken or counted in the firm decision-making process and have, as a practical matter, no voice in critical issues of firm governance.  Accordingly, and subject to completion of EEOC's investigation,  Sidley may be an "employer" for purposes of the ADEA.  EEOC's pursuit of its administrative investigation is serious, and its subpoena, authorized by federal statute, ought to be enforced.

### D.   Conclusion

The Commission issued the Subpoena in furtherance of an investigation which is clearly within the Commission's authority and the information sought is relevant to the matters under investigation.  For these reasons and the reasons set forth above, EEOC  respectfully requests:

1. That an Order To Show Cause be issued directing Respondent to appear before this Court and to show cause, if there be any, why an Order should not be issued directing it to comply with the Subpoena;

2. That upon Respondent's response to the Order To Show Cause, an order be issued directing Respondent to comply with the Subpoena; and

3. That the EEOC be awarded its costs in bringing this action; and

4. That the EEOC be granted such further relief as may be necessary and appropriate.

Date: December 18, 2001

Respectfully submitted,

_____
John Hendrickson
Regional Attorney

_____
Noelle Brennan
Supervisory Trial Attorney

_____
Deborah L. Hamilton
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
  COMMISSION
Chicago District Office
500 West Madison Street
Suite 2800
Chicago, Illinois 60661
(312) 353-7649

24